# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ROBERT ELLIS, JR.**                                                              **PLAINTIFF**

v.                                                                                                    No. 1:07CV124-A-A

**COLUMBUS POLICE DEPARTMENT, ET AL.**                           **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Robert Ellis, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Ellis alleges that the defendants used excessive force against him during his arrest by forcibly holding his nose, applying a choke-hold, and using a Taser in an attempt to compel him to spit out a plastic bag containing cocaine. The defendants have moved for summary judgment, Ellis has responded, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment shall be granted in part and denied in part.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*,

204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[1]

Robert Dale Ellis, Jr. was born in Columbus, Mississippi, on June 9, 1968. Shortly thereafter he moved away from Columbus to Bakersfield, California, where he lived until after he graduated from high school. While living in California, Mr. Ellis was convicted of three felonies: possession of cocaine, unlawful taking of a motor vehicle, and attempted robbery. He committed each offense in Kern County, California. After serving his sentences in California, Ellis moved back to Columbus, Mississippi. Ellis pled guilty in this court to the charge of conspiracy to distribute crack cocaine. (Exhibit 3, Deposition of Ellis, pages 1 – 12). Ellis had completed that sentence and was free again on the night of the arrest giving rise to this suit.

On the night of May 3, 2006, and into the next morning, Ellis was drinking liquor at a party. At some point during the party, he decided to drive a borrowed Mazda MX-6 and go for a ride. (Exhibit 3, pp. 18-19, 24-26). During this trip, he picked up John Anderson and Paul Eggleston as passengers. (Exhibit 3, p. 24). Ellis passed a police car going in the opposite direction a few blocks from the Columbus City Police Department Command Center. The police officer, Ryan Woods, noticed that Ellis was not driving properly. Woods turned his police car around and activated his blue light in an effort to stop Mr. Ellis. Ellis eventually pulled over, restrained, and placed under arrest. He was intoxicated while driving with a suspended license – and refused to spit out what the arresting officers believed to be crack cocaine in a plastic bag inside Ellis' mouth. One of the arresting officers noticed that Ellis was concealing a plastic bag in his mouth, and the officers tried to remove it. The officers' attempts to remove the bag, which

---

[1] The exhibits mentioned in this memorandum opinion refer to those in the defendants' motion for summary judgment.

contained cocaine, from Ellis' mouth was recorded from a video camera inside one of the arresting officers' police cars. (Exhibit "1," DVD). In the video, the officers state that they observed a baggy of white powder in Ellis' mouth, and a white object is visible within his mouth at several points during the video. The officers ordered Ellis to spit out the plastic bag more than *fifty* times during the several minutes recorded on video. Ellis, however, refused to open his mouth; indeed, Ellis continued to chew on the plastic bag in his mouth and try to swallow it in an obvious attempt to destroy evidence. (Exhibit "1"). During the officers' attempts to remove the bag from Ellis' mouth, cocaine began leaking from the bag, getting on Ellis' face, lips, and the hood of the police car.

After approximately twenty to thirty orders for Ellis to "spit it out," the officers warned him that they would use a Taser upon him if he refused to spit out the plastic bag. The officers then employed a Taser – while at the same time holding his nose and his larynx to prevent him from swallowing the cocaine in the plastic bag. Despite these measures, Ellis continued to chew the cocaine-filled plastic bag – and further resisted their efforts to get him to spit out the cocaine. One officer told Ellis that if he chewed and swallowed the cocaine, it would give him a heart attack. Another officer said "if he swallows it, it's going to kill him." After many attempts to induce Ellis to spit out the cocaine bag – and several applications of the Taser – it became obvious that Ellis would not do so.

> Officer Lewis testified:
>
> By that time, in the process of trying to get this stuff out of his mouth, we were kind of holding his mouth open, trying to get him to spit it out and all this stuff. And you can see a white chalky residue about his entire mouth, on his lips and everything, on the outside of his mouth.

(Exhibit 5, Criminal Trial Transcript, p. 88). Officer Beard instructed Officer Woods to holster the Taser and not to employ it anymore. The officers on the scene all testified that the reason they Tased Mr. Ellis was that they thought if he chewed up what they believed was cocaine, that it might cause a heart attack or death[2].

One of the officers called an ambulance, and a few minutes later, Ellis was taken to the hospital. During the ambulance trip, an Emergency Medical Technician noted that Mr. Ellis had stopped breathing and performed the Heimlich maneuver on him. At that point, a plastic bag came out of his mouth, and the Medical Technician removed the plastic bag. (Exhibit "2", Deposition of Ryan Woods, p. 28).

Ellis was taken to the hospital. He does not know whether he went into a coma, was sedated, or merely became unconscious. (Exhibit 3, pp. 37-38). Throughout his deposition, Ellis exercised his Fifth Amendment privilege against self-incrimination regarding what was in his mouth at the time of his arrest. He did not, however, dispute the accuracy of the hospital records. Ellis testified:

> **Q**. Okay, you have made a thorough review of all these records?
>
> **A.** (Nods affirmatively).
>
> **Q.** You see here on the drug screen it says "cocaine pending confirmation." You see that?
>
> **A.** (Nods affirmatively).
>
> **Q.** Yes?
>
> **A.** Yes.

---

[2] Exhibit 5, Criminal Trial Transcript, pp 81, 84, 108.

> **Q.** And then, "cocaine confirmed positive." Somebody has highlighted that. So you are aware that the hospital, at least, did a test, a drug screen urine panel, and determined that you had cocaine in your system.
>
> **A.** Yes.
>
> **Q.** You don't deny the validity of the test, do you?
>
> **A.** I don't even remember them testing me.
>
> **Q.** So you don't deny the validity of the test do you?
>
> **A.** No I don't deny, it's on this report.

(Exhibit "3", p. 44) (referring to Exhibit "6"). Ellis claimed in his amended complaint that the actions of the officers on the night of his arrest caused him to go into a coma; however, he testified at his deposition that he didn't know if he became comatose. (Exhibit "3," pp. 37-38). Ellis did, however, admit in his response to the motion for summary judgment that he ingested cocaine.

Ellis, when he filed his original *pro se* complaint, did not allege any constitutionally significant injury. However, he later filed a motion claiming that as a result of the incident complained of, that he "went into a coma" for three days. However, Ellis does not know whether he was in a coma, under sedation, under the influence of the cocaine that he swallowed, or incapacitated due to a combination of the liquor and the cocaine. Ellis testified at his deposition:

> **Q.** No medical doctor has told you that you passed out because of their holding your nose and your throat did they?
>
> **A.** Well, they never—they never reported it. They never—they never reported to the medical staff that I was Tasered. They never reported to the medical staff that I was choked in order for them to even try to treat me differently than what they did. It was never reported.
>
> **Q.** Listen to my question, though: Did any medical doctor ever tell you that

>
> you had passed out because you had been choked or that you had had your nose held?
>
> **A.** They never even spoke with me. They just kicked me out of the hospital.
>
> …
>
> **Q.** You have signed a document in connection with this case that says you were in a coma that whole time.
>
> **A.** Yes.
>
> **Q.** Is that your testimony?
>
> **A.** Yes.
>
> **Q.** Not that you were sedated.
>
> **A.** I don't know—sedated and coma. I was out for—I just know I was out for 3 days.

(Exhibit 3, pp. 36, 37).

At the Ellis' trial on charges of possession of cocaine, the ambulance driver testified that Ellis was having difficulty breathing when she arrived on the scene. Ellis was lying on the ground, sweating, with a rapid heartbeat, and his skin was clammy and discolored. She testified to the jury that these symptoms were consistent with the first stages of a drug overdose, which can result in problems, including heart attack, stroke, brain damage and seizures. (Exhibit 5, pp. 126-127). They examined Mr. Ellis in the ambulance and found that he had no signs of trauma, bruises, scrapes, cuts or anything else to indicate that he'd be in a fight or otherwise "beat up." (Id. p. 147).

## Discussion

The plaintiff's claim of excessive force against the defendants regarding efforts of the police officers to remove the bag of cocaine from his mouth fails for three reasons. First, the force used by the defendants was reasonable, whether to preserve evidence of the plaintiff's crime – or simply to save his life from choking or cocaine overdose. Second, as to his claim against the City of Columbus, the plaintiff has not alleged a policy, practice, or custom of the city leading to the use of excessive force. As such, this claim must also fail. Finally, the plaintiff's claims fail because, if he prevailed on those claims, the validity of his conviction for possession of cocaine would be in doubt under the rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

### Reasonable Force

The first step in this analysis is determining the proper standard of review. Ellis and the defendants cited many cases setting forth the standard to determine what level of force is reasonable when physically removing evidence from the plaintiff's body. Every claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a *free citizen* should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(emphasis in original).

To determine the reasonableness under the Fourth Amendment of the force used during a seizure, the court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests. *Id.* at 396. The court must view the totality of the circumstances, including the severity of the crime, whether the suspect poses an

immediate threat to the safety of the officers, himself, or others, whether the suspect is actively resisting arrest, or trying to flee from the officers. *Id.* Courts must not use the crystal clarity of hindsight when determining whether the force used was reasonable, taking into account that law enforcement officers must often "make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force" necessary in each situation. *Id.* at 397. The standard is one of *objective* reasonableness in light of the circumstances confronting the officer at the time; the arresting officer's good or ill intent is not relevant. *Id.*

The issue in the present case is whether the force the defendants used against Ellis – to retrieve the bag of cocaine from his mouth, and thus to save his life – was objectively reasonable. The court holds that the force was reasonable to accomplish these ends. Ellis, a four-time convicted felon, was driving on a suspended license while intoxicated on liquor – and carrying a plastic bag containing cocaine – as he drove within a few blocks of a police station. When a police officer noticed Ellis driving erratically, he turned on his blue lights and, eventually, Ellis pulled over.[3] When Ellis had been subdued and put into handcuffs, one of the officers noticed that Ellis had a plastic bag containing a white substance in his mouth, which the officers thought to be crack cocaine. The officers ordered Ellis to spit out the bag, and Ellis refused to do so. The officers tried holding Ellis' throat and pinching his nose shut in an attempt to get him to spit out the bag, all the while telling Ellis to "spit it out," and warning him many times that ingesting cocaine could give him a heart attack and kill him (not to mention that Ellis could simply choke on the plastic bag itself). Ellis, however, kept chewing and attempting to swallow the plastic

---

[3]The parties disagree regarding how quickly Ellis pulled over – and whether Ellis fled on foot after doing so. Resolution of these facts does not affect the outcome of the this claim; as such, the dispute over these facts is not material, and summary judgment is appropriate.

bag.  Soon, the officers saw that white powder was coming from Ellis' mouth, and they redoubled their efforts because the cocaine was now clearly out of the bag – and in Ellis' mouth.  At that point, one officer said, "He's gonna die if he swallows that much cocaine," and then directed dispatch to send an ambulance to the scene.

The recording on the dashboard camera of the police vehicle captures the officers' efforts to retrieve the bag of cocaine – and their very real concern that Ellis might die of cocaine overdose if he swallowed the plastic bag.  Pinching a suspect's nose, holding his throat, and applying pressure to his jaw to retrieve evidence that the suspect is trying to swallow is a constitutionally acceptable practice.  *Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960).  Using these techniques, the officers got the bag of cocaine toward the front of Ellis' mouth (as can be seen, briefly, several times on the recording).  Ellis, though, despite the warnings, continued trying to chew and swallow the bag and the cocaine.  The officers then tried to get Ellis to comply with a Taser.  As the wires of the Taser had become tangled around one of the officers, they removed the end cap with the wires attached, and, after first warning Ellis and ordering him – again – to "spit it out," employed the Taser in this "dry stun" mode.  Despite the obvious pain and discomfort of the Taser, Ellis continued chewing and attempting to swallow the bag of cocaine.  Several times during the video white powder is visible around Ellis' lips and mouth.  The officers continued their efforts to remove the bag from Ellis' mouth, alternately holding his throat and pinching his nose, and "dry stunning" him with the Taser several times.  Ellis could clearly breathe during the encounter because he kept talking with the officers and responding to their questions.  He would not, however, spit out the bag of cocaine.  Toward the end of the encounter, Ellis became less lucid, less stable on his feet, and somewhat glassy-eyed.

By the time the ambulance arrived, Ellis was lying on the ground, sweating, with a rapid heartbeat, and cold, clammy, and discolored skin – all symptoms of the first stage of drug overdose. One of the officers rode in the ambulance with Ellis during the trip to the hospital. Ellis lost consciousness during the ride, sucked the plastic bag into his trachea, and stopped breathing. The Emergency Medical Technician then performed the Heimlich maneuver, which dislodged the plastic bag from the plaintiff's throat. The police officer ensured that the bag was kept as evidence. Hospital reports revealed that Ellis was intoxicated from alcohol and suffered from "Acute large ingestion of cocaine." Later lab testing confirmed high levels of alcohol in Ellis' system, as well as the presence of cocaine.

If a suspect attempts to swallow evidence, law enforcement officers may hold his throat and pinch his nose shut in an attempt to retrieve the evidence. *Espinoza v. United States*, 278 F.2d 802 (5th Cir. 1960). Thus, the only question is whether the officers' decision to employ the Taser to convince Ellis to spit out the bag of cocaine constituted excessive force under the Fourth Amendment. Given the valid concern that Ellis could die from an overdose of the cocaine he was ingesting, the court holds that the use of the Taser in an attempt to retrieve the bag of cocaine – in an attempt to save Ellis' life – constitutes a reasonable application of force by the defendants. As such, the plaintiff's claim of excessive force regarding the defendants' attempts to remove cocaine from his mouth shall be dismissed.

## Claims Against the City of Columbus

The plaintiff has sued the City of Columbus Police Department, which the court construes as a claim against the City itself. When "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of

culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Cmm'srs v. Brown* 520 U.S. 397, 405 (1997). Thus, the plaintiff must not only show that an informal custom causing his injuries existed, he must also demonstrate that the municipal policymakers are actually or constructively aware of the custom. *Pineda v. City of Houston*, 291 F.3d 325, 330-31 (5th Cir. 2002). In addition, Ellis would have to establish that the City of Columbus promulgated the custom with "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Brown,* 520 U.S. at 407). Evidence of an isolated incident (such as using a Taser to force the a suspect to spit out illegal drugs) will not support a finding of municipal liability based on informal custom. *Burge v. St. Tammany Parish*, 336 F.3d 363, 371 (5th Cir. 2003) (noting that evidence of an isolated occurrence will not support municipal liability predicated on a custom theory). Ellis has not alleged that such a custom exists and has presented no evidence of similar arrests where the suspect refused to spit out illegal drugs and was Tased. Ellis has not established a policy or custom of Tasing suspects to force them to spit out drugs. As such, his claim against the City of Columbus fails as a matter of law.

### *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court clarified the interrelationship between actions under 42 U.S.C. § 1983 and *habeas corpus* proceedings. The Supreme Court emphasized in *Heck* that there is no requirement of "exhaustion" of *habeas corpus* remedies in order to proceed on a claim under § 1983. Rather, a § 1983 damage claim that calls into question the lawfulness of conviction or

confinement or otherwise demonstrates the invalidity of the conviction or confinement is not cognizable under § 1983 until such time as the plaintiff is able to

> prove that the conviction or sentence has been *reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 114 S. Ct. at 2372; *see also Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994). Only if the court finds that the plaintiff's § 1983 suit, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 action be allowed to proceed. *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995).

If Ellis succeeded on his claim for damages against the defendants for their attempts to remove a bag of cocaine from his mouth, it would necessarily draw into question the validity of his conviction or sentence. Indeed, the state trial court declined to suppress evidence obtained by the forcible removal of the cocaine from Ellis' mouth. Ellis was convicted following his arrest for possession of cocaine. During his deposition Ellis admitted that he ingested cocaine. He has appealed his conviction to the Mississippi Supreme Court in Cause Number 2007-KA-02178-COA. In his appeal brief, Ellis argues that the evidence offered against him at trial was obtained in violation his Fourth Amendment rights and that the trial court committed reversible error in failing to suppress the evidence. Thus, Ellis asks the Mississippi Supreme Court for a reversal of his conviction because of the force used to obtain the evidence against him under *Rochin v. California,* 342 U.S. 165, 172 (1952).

His complaint in this action "squarely challenges the factual determination that underlies his conviction for possession of cocaine" and if he prevails, "he will have established that his

-13-

criminal conviction lacks any basis." *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 324-25 (5th Cir. 2004). For these reasons, this claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Ellis has not "demonstrate[d] that the conviction or sentence has already been invalidated;" as such, his claims of excessive force must be dismissed. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

**Claims Regarding the Pursuit and Arrest of Ellis**

Ellis alleges a separate claim of excessive force against his arresting officers at the time he was initially pulled over and exited his vehicle. Ellis alleges that he complied with the officers' orders to get out of his vehicle with his back to them – but was nonetheless Tased in the back. The officers, however, testified at the criminal trial and submitted affidavits in this case stating that Ellis would not pull over until he had first made three laps around the block, then leapt from his vehicle (leaving his two friends inside), fled on foot into the woods. One officer then attempted to Tase Ellis, but only one dart struck him. That officer had to wrestle Ellis to the ground and detain him with one arm while keeping the Taser away from Ellis, and the officer became entangled in the Taser wired. At that point, had the Taser been activated, it would have incapacitated both of them. These differing stories clearly constitute an issue of material fact, and disposition of this issue through summary judgment is inappropriate. As such, the defendants' motion for summary judgment as to the excessive force claim arising out of Ellis' initial stop and arrest shall be denied.

In sum, the plaintiff's claims against the City of Columbus shall be dismissed for failure to state a claim upon which relief could be granted. In addition, the plaintiff's claim that the arresting officers used excessive force against him while removing a bag of cocaine from his

mouth shall be denied. Finally, the plaintiff's claim of excessive force during his initial stop shall proceed. A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the ___15th___ day of June, 2009.

                                                  **/s/ Sharion Aycock**
                                                  **U. S. DISTRICT JUDGE**